IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HUSIEEN EDMONDS,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | NO.   20-cv-658 |
| | : | |
| **SOUTHEASTERN PENNSYLVANIA** | : | |
| **TRANSPORTATION AUTHORITY; and** | : | |
| **VINCENT DELLAVECCHIA (In His** | : | |
| **Individual and Official Capacity)** | : | |
| Defendants. | : | |

**MEMORANDUM**

**SITARSKI, M.J.**                                                                                                    **May 16, 2023**

Presently pending before the Court is Plaintiff's Motion for Leave of Court to File First Amended Complaint (Mot. for Leave, ECF No. 25), Defendant's response thereto (Resp. to Mot. for Leave, ECF No. 27), Defendant's Motion to Sever Plaintiff's Claims Against Separate Defendants (Mot. to Sever, ECF No. 19), and Plaintiff's response thereto (Resp. to Mot. to Sever, ECF No. 26).[1]  For the reasons that follow, Plaintiff's motion for leave and Defendant's motion to sever shall be **GRANTED**.

I.   **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff Husieen Edmonds is a former employee of the Southeastern Pennsylvania Transportation Authority ("SEPTA").  (Compl., ECF No. 1, at ¶¶ 21, 60).  On February 21, 2019, he dual-filed a discrimination charge against Defendants SEPTA and Vincent

---

[1] The Honorable C. Darnell Jones, II referred the matters to me for disposition pursuant to 28 U.S.C. § 636(b)(1)(A).  (Order, ECF No. 28, at 1).  Subsequently, the case was reassigned to the Honorable R. Barclay Surrick, who referred the matters to me for disposition pursuant to 28 U.S.C. § 636(b)(1)(A).  (Order, ECF No. 41, at 1; Order, ECF No. 42, at 1).

DellaVecchia, his (former) supervisor, with the United States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").  (Mot. for Leave, ECF No. 25-1).  In his administrative charge, he claims that DellaVecchia sexually harassed him by making unwanted sexual comments and advances, SEPTA was aware of this harassment, and that, when he reported the harassment, SEPTA, in addition to failing to conduct a proper investigation or take any remedial measures, retaliated against him.  (*Id.* at ¶¶ 13-41).  Subsequently, Edmonds allegedly requested intermittent leave pursuant to the Family and Medical Leave Act ("FMLA") on account of the panic attacks and severe anxiety he was suffering due to the alleged discrimination and harassment.  (Compl., ECF No. 1, at ¶¶ 46-50).  SEPTA allegedly discriminated against Edmonds for his use of FMLA leave by giving him "points on his attendance for days that he took related to his stress and anxiety," suspending him without pay as a result of these points, making him sign a last chance letter, firing him, and finally withholding his last paycheck.  (*Id.* at ¶¶ 52-61).

      The EEOC issued a "right to sue" notice on November 9, 2019.  (Resp. to Mot. for Leave, ECF No. 27-4, Ex. D; Mot. for Leave, ECF No. 25-2).  On February 2, 2020, Edmonds filed a complaint against SEPTA and DellaVecchia.  (Compl., ECF No. 1).  In his complaint, he reiterates the allegations set forth in his administrative charge while adding allegations concerning his use of FMLA leave.  (*Id.* at ¶¶ 17-64).  Under the "Exhaustion of Administrative Remedies" section of the pleading, Edmonds alleges that "Plaintiff's PHRA claims are still pending before the PHRC because less than one year has elapsed since PHRC assumed jurisdiction over Plaintiff's Charge."  (*Id.* at ¶ 13).  He states that "Plaintiff will seek leave to amend this complaint to assert his PHRA claims against [SEPTA and DellaVecchia]" under Federal Rule of Civil Procedure 15(a), (c), and (d).  (*Id.* at ¶ 14).

Edmonds asserts seven causes of action. In his first cause of action, Edmonds alleges a Title VII claim of sex/gender discrimination against SEPTA. (*Id.* at ¶¶ 65-76). The second cause of action is a hostile work environment claim under Title VII against SEPTA. (*Id.* at ¶¶ 77-97). As part of this claim, Edmonds alleges that "[a]n employer is strictly liable for supervisor harassment that 'culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment.'" (*Id.* at ¶ 79) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)). He likewise states that "[r]espondeat superior theory for the acts of non-supervisory employees exists where 'the defendant knew or should have known of the harassment and failed to take prompt remedial action'" (*id.* at ¶ 81) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1486 (3d Cir. 1990)), and that "[e]mployer liability for co-worker harassment also exists where 'the employer failed to provide a reasonable avenue for complaint'" (*id.* at ¶ 82) (quoting *Huston v. Proctor & Gamble Paper Prods.*, 568 F.3d 100, 105 (3d Cir. 2009)). In the third cause of action, Edmonds advances a claim of retaliation under Title VII against SEPTA, raising the same three theories of employer liability. (*Id.* at ¶¶ 98-119).

In the fourth and fifth cause of action, Edmonds asserts discrimination and retaliation claims under the PHRA against both SEPTA and DellaVecchia, and in his sixth cause of action he asserts aiding and abetting under the PHRA against DellaVecchia. (*Id.* at ¶¶ 120-28). He indicates that all three claims will be amended upon the conclusion of the PHRC proceedings. (*Id.* at ¶¶ 122, 125). Finally, his seventh cause of action is a claim against SEPTA for violations of the FMLA. (*Id.* at ¶¶ 129-140).

Having been granted an extension of time (Order, ECF No. 8, at 1), SEPTA filed its answer on September 17, 2020. (Answer, ECF No. 10). DellaVecchia apparently was served on February 12, 2021, pursuant to a previously granted motion for alternative service. (Order, ECF

3

No. 11, at 1; Req. for Default, ECF No. 13, at 2 ¶ 3; *id.*, No. 13-1, Ex. A). On June 29, 2021, Edmonds obtained a default under Federal Rule of Civil Procedure 55(a) against DellaVecchia, who is apparently suffering from cancer and has no attorney, because of his failure to plead or otherwise defend. (Req. for Entry of Default, ECF No. 13; Mot. to Sever, ECF No. 19-3, Ex. B at ¶¶ 8-9; Civ. Docket Sheet at 3). Edmonds refused a subsequent request from SEPTA's counsel to dismiss DellaVecchia. (Mot. to Sever, ECF No. 19-5, Ex. D at 1). Edmunds subsequently served DellaVecchia with requests for admissions, which were withdrawn after SEPTA had questioned the appropriateness of serving such requests on a party in default. (Mot. to Sever, ECF No. 19-3, Ex. B at ¶ 19; *id.* ECF No. 19-6, Ex. E; *id.*, ECF No. 19-9, Ex. H; Resp. to Mot. to Sever, ECF No. 26, at 3 n.2).

On October 15, 2021, Plaintiff deposed DellaVecchia pursuant to a subpoena. (Mot. to Sever, ECF 19-6, Ex. B .at ¶ 23, *id.* ECF No. 19-10, Ex. I). DellaVecchia subsequently e-mailed SEPTA's counsel, stating that he would be unavailable for a year or more due to his cancer treatment. (Mot. to Sever, ECF No. 19-11, Ex. J at 5).

On March 4, 2022, SEPTA moved to sever Edmonds's claims against each Defendant. (Mot. to Sever, ECF No. 19, at 1). On March 25, 2022, Edmonds filed a motion for leave to file a first amended complaint as well as his response to SEPTA's motion to sever (Mot. for Leave, ECF No. 25; Resp to Mot. to Sever, ECF No. 26). SEPTA filed its opposition to the motion for leave to amend on April 6, 2022. (Resp. to Mot. for Leave, ECF No. 27).

In his proposed first amended complaint, Edmonds omits the allegations in his fourth, fifth, and sixth causes of action concerning his pending PHRC claims. In place of these allegations, he alleges that SEPTA and DellaVecchia unlawfully discriminated against him under the PHRA due to his sex and gender and his opposition to SEPTA's unlawful employment

4

practices. (Mot. for Leave, ECF No. 25-3, at ¶¶ 122, 126). He also claims that DellaVecchia discriminated against him under the PHRA "by aiding, abetting, inciting, compelling and coercing the discriminatory conduct." (*Id.* at ¶ 129).

Finally, with one exception,[2] discovery in this matter was completed in July 2022. (Stipulation & Order, ECF No. 32, at 1).

## II. LEGAL STANDARDS

### A. Motion for Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) governs whether party may file an amended complaint when, as is the case here, a responsive pleading has been served: "[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." It is well established that "motions to amend pleadings should be liberally granted." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citing *Adams v. Gould*, 739 F.2d 858, 867-68 (3d Cir. 1984)). The fundamental purpose of Rule 15 is to give a party the opportunity to test his or her claims on their merits. *See, e.g.*, *United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2006).

"Leave to amend must generally be granted unless equitable considerations render it

---

[2] On July 26, 2022, Judge Jones entered a stipulation and order providing that discovery is extended solely to allow SEPTA to depose "Plaintiff's treating physician, Anthony Colavita, M.D.," because he is a critical witness who has refused to cooperate with scheduling his deposition, leading SEPTA to move for contempt and sanctions against him. (Stipulation & Order, ECF No. 36, at 1). On August 4, 2022, this Court found that SEPTA has established a prima facie case of civil contempt against Dr. Colavita and ordered him to appear and show cause before Judge Jones why he should not be held in contempt and face sanctions. (Mem. Order, ECF No. 37, at 1-5; Order, ECF No. 38, at 1).

otherwise unjust." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  "Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Id.* (citing *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993)); *see also Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).  "[P]rejudice to the non-moving party is the touchstone for the denial of an amendment." *Mullin v. Balicki*, 875 F.3d 140, 155 (3d Cir. 2017) (quoting *Arthur*, 434 F.3d at 204).  Given the liberal standard of Rule 15(a), the party opposing amendment bears the burden of showing undue delay, bad faith, prejudice, or futility. *See, e.g.*, *Cureton*, 252 F.3d at 273.  The decision to grant or deny a motion for leave to amend is within the sound discretion of the district court. *See, e.g., id.* at 272.

### B. Severance

Federal Rule of Civil Procedure 21 states that, "on motion or on its own, the court may at any time, on just terms, add or drop a party" or "may also sever any claim against a party." FED. R. CIV. P. 21.  Although entitled "Misjoinder and Nonjoinder of Parties," Rule 21 "may be used to organize problematical issues other than joinder problems." *Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 355 (E.D. Pa. 2000) (citing 4 *Moore's Federal Practice* § 21.02(1)).  "In general, questions of severance are addressed to the broad discretion of the district court.  Thus, a court may sever an unrelated claim and give it separate treatment when doing so would be in the interest of some or all of the parties." 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1689 (3d Cir. 2008).

In exercising its discretion, the Court may consider the following factors:

> (1) whether the issues sought to be tried separately are significantly different from one another, (2) whether the separable issues require the testimony of different witnesses and different documentary proof; (3) whether the party opposing the

6

>severance will be prejudiced if it is granted, and (4) whether the party requesting the severance will be prejudiced if it is not granted.

*Shapiro*, 190 F.R.D. at 355 (quoting *German v. Fed. Home Loan Mortg. Corp.*, 896 F. Supp. 2d 1385, 1400 (S.D.N.Y. 1995)); *see also Archway Ins. Servs., LLC v. Harris*, C.A. No. 10-5867, 2011 WL 2415168, at *6 (E.D. Pa. June 15, 2011); *Turner Const. Co. v. Brian Trematore Plumbing & Heating, Inc.*, C.A. No. 07-666, 2009 WL 3233533, at *4 (D.N.J. Oct. 5, 2009).  No one factor is determinative, and a court must look to the overall equities of the case.  *See, e.g.*, *Turner Const. Co.*, 2009 WL 3233533, at *4.

### III.   ANALYSIS

Because the delay is not undue and there is no prejudice to SEPTA, Edmonds's Motion for Leave of Court to File First Amended Complaint shall be granted.  The Court also grants SEPTA's Motion to Sever Plaintiff's Claims Against Separate Defendants because the applicable factors weigh in favor of severance.

#### A.   Leave to Amend

SEPTA opposes Edmonds's motion for leave to file a first amended complaint on the grounds of undue delay.  (Resp. to Mot. for Leave, ECF No. 27, at 7-10).  "[D]elay alone is an insufficient ground to deny leave to amend."  *Cureton*, 252 F.3d at 273 (citing *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).  However, "at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party."  *Adams*, 739 F.2d at 868 (citing *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir. 1982)).  "[D]elay that is 'undue' – a delay that is protracted and unjustified – can place a burden on the

court or counterparty, or can indicate a lack of diligence sufficient to justify a discretionary denial of leave." *Mullin*, 875 F.3d at 151 (citing *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008); *Cureton*, 252 F.3d at 273). In fact, "a significant, unjustified, or 'undue' delay in seeking the amendment may itself constitute prejudice sufficient to justify denial of a motion for leave to amend." *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 629 (3d Cir. 2013) (citing *Cureton*, 252 F.3d at 273). Accordingly, "a gap between when amendment becomes possible and when it is actually sought can, in certain circumstances, be grounds to deny leave to amend." *Mullin*, 875 F.3d at 151. In other words, "[d]elay may become undue when a movant has had previous opportunities to amend a complaint" but failed to do so. *Cureton,* 252 F.3d at 273. The court thereby must consider the moving party's reasons for failing to amend sooner. *See, e.g., id.*

In his motion for leave, Edmonds points out that his initial complaint "contained place holder causes of action for his state claims since one year had not yet elapsed from the time he filed his charge of discrimination" and requested "in each state cause of action the ability to amend the Complaint when those claims became ripe." (Mot. for Leave, ECF No. 25, at 2) (citing Compl., ECF No. 1). According to Edmonds, Defendants were on notice that he sought to bring state causes of action. (*Id.*) (citing Answer, ECF No. 10; Mot. to Sever, ECF No. 19). Because one year has elapsed since he filed his charge of discrimination, Edmonds asserts that his state law PHRA claims are ripe. (*Id.*). More broadly, Edmonds argues that the amendment will add minimal allegations to this case, no additional discovery is necessary because the state law claims are evaluated on the same basis as the federal claims under Title VII, and Edmonds himself will be prejudiced if leave is denied because the PHRA allows for damages that are unavailable under Title VII. (*Id.* at 3-4).

8

It is uncontested that Edmonds filed his administrative charge on February 21, 2019 and thus he could not have included the PHRA claims in his initial complaint because it was filed less than a year later on February 5, 2020. *See*, *e.g.*, *Burgh v. Borough of Montrose*, 251 F.3d 465, 471 (3d Cir. 2001) ("A complainant may not file an action in court for a period of one year [after filing the administrative charge]. . . . [A]fter one year has elapsed, a complainant may bring a court action regardless of whether or not he has received a letter from the PHRC.") (citations omitted); *Tabon v. Univ. of Pa. Health Sys.*, C.A. No. 10-cv-2781, 2012 WL 2953307, at *3 n.1 (E.D. Pa. Jul. 20, 2012) (summarizing PHRA filing requirements). However, he could have then filed the PHRA claims as of February 22, 2020. *See, e.g.*, *Burgh*, 251 F.3d at 471. Edmonds did not move for leave to amend until March 25, 2022, and he did so on the same day he filed his opposition to SEPTA's severance motion. SEPTA cites to several decisions determining that an unexcused delay in excess of two years, "and even sometimes less," may qualify as undue. (Resp. to Mot. for Leave, ECF No. 27, at 8 (citing seven cases)). SEPTA argues that Edmonds's delay is undue, asserting that he "had more than ample opportunity to seek the relief he now requests," that there "is no legitimate reason why he [waited] so long to file this Motion," and that he "offered absolutely no reason in his moving papers to justify or even explain the significant delay." (Resp. to Mot. for Leave, ECF No. 27, at 8-9) (citations omitted) (footnote omitted). It contends that this long and unjustified delay prejudices SEPTA. (*Id.* at 9-10).

The Court finds that the delay in this case is not undue and that it does not prejudice SEPTA. Although the state law claims became ripe shortly after the filing of the original complaint, Edmonds waited until after SEPTA had moved more than two years later to sever the claims against DellaVecchia to file his own motion for leave to amend. He also does not

articulate a specific reason for why he had failed to act sooner.  Nevertheless, this is an unusual case because the claims at issue have, in effect, been a part of this case from the beginning.  It is undisputed that the proposed claims will not require any additional discovery (and in fact discovery ended in July 2022, except as to Dr. Colavita (*see* Stipulation & Order, ECF No. 36)), and PHRA claims are generally evaluated under the same standards as their Title VII counterparts, *see Kroptavich v. Pa. Power & Light Co.*, 795 A.2d 1048, 1055 (Pa. Super. Ct. 2002).  In fact, the Clerk entered default against DellaVecchia, even though, according to SEPTA and Edmonds, the only claims against him in the original complaint are PHRA "placeholder" claims. (Civ. Docket Sheet at 3; Mot. for Leave, ECF No. 25, at 2; Resp. to Mot. for Leave, ECF No. 27, at 5).  For its part, SEPTA does not articulate any specific prejudice resulting from the delay.

In *Tabon*, 2012 WL 2953307, the Court granted a similar motion to amend a federal employment discrimination complaint in order to add claims under the PHRA.  *Id.* at *1-4.  Like SEPTA, the defendants in *Tabon* claimed undue delay, arguing that "Plaintiff unduly delayed in seeking leave to amend because the motion was filed eighteen months from the time Plaintiff could have sought relief and several months after the close of discovery."  *Id* at *3 (citation omitted).  The Court ruled in favor of the plaintiff because, although the plaintiff did not articulate any reason excusing her delay, defendants likewise failed to assert prejudice.  *Id.*  Defendants did not provide any explanation as to how granting the motion would affect their ability to prepare a defense, and, like the *Tabon* defendants, they "do *not* contend that further discovery would be required by addition of the PHRA claims, nor do they argue the potential increase in damages works the type of 'prejudice' that justifies denial of amendment."  *Id.* (emphasis in original).  The Court made clear in *Tabon* that the plaintiff's PHRA claims "are

identical to, and involve the same legal analysis as, the Title VII claims" and that the fact that the PHRA has no cap on damages for pain and suffering does not constitute sufficient prejudice to justify denying leave to amend. *Id.* at *4 (citing *Devore v. Cheney Univ. of Pa.*, C.A. No. 11-274, 2012 WL 10322, at *15 (E.D. Pa. Jan. 3, 2012); *Logan v. In-Ter-Space Servs., Inc.*, C.A. No. 07-0761, 2007 WL 2343868, at *3 (E.D. Pa. Aug. 15, 2007)). Like the defendants in *Tabon*, SEPTA's opposition to the motion for leave to amend fails to identify any specific prejudice it will suffer on account of the proposed amended pleading (and instead merely relies on the length of and lack of justification for the delay as sufficient to show prejudice). Further, although Edmonds waited somewhat longer than Tabon to file his motion (25 versus 18 months), he sought leave to amend before the close of discovery whereas she did not. There is also no indication that Tabon included "placeholder" claims in her original complaint or explicitly stated her intention to seek leave to amend her complaint to assert these claims at the appropriate time.

Accordingly, because Edmonds's delay was not "undue" and in any event did not prejudice SEPTA, this Court grants his motion for leave.

### B. Motion to Sever

SEPTA argues that the *Shapiro* factors weigh in favor of severing Edmonds's claims against DellaVecchia from his claims against SEPTA. (Mem. of Law in Supp. of Mot. to Sever, ECF No. 19-1, at 12-19). Edmonds contends that they do not. (Resp. to Mot. to Sever, ECF No. 26, at 4-9). This Court agrees with SEPTA.

#### 1. The Parties' Positions

As to the first factor, whether the issues sought to be tried separately are significantly different from one another, SEPTA asserts that the issues concerning SEPTA and DellaVecchia are "significantly different" for several procedural and substantive reasons. (Mem. of Law in

11

Supp. of Mot. to Sever, ECF No. 19-1, at 12) (quoting *Shapiro*, 190 F.R.D. at 355). It argues that there are important procedural questions not involving SEPTA that must be addressed before considering the merits of the claims against DellaVecchia, which likewise do not involve SEPTA. (*Id.* at 12-14). Specifically, SEPTA emphasizes that there is a critical distinction between the two defendants: "Mr. DellaVecchia is in default and SEPTA is not." (*Id.* at 13). According to SEPTA, "[t]he only reason that any claims Plaintiff may purport to assert against Mr. DellaVecchia are moving forward – to the extent such claims are validly pled in this case – is that Plaintiff has failed or refused thus far to move for default judgment against Mr. DellaVecchia pursuant to Rule 55(b)(2)."[3] (*Id).*

Turning to the "substantive" differences, SEPTA contends that the allegations against the two Defendants are based on "distinct events and circumstances." (*Id.*) (citing *Next Phase Distrib., Inc. v. John Does 1-27*, 284 F.R.D. 165, 167 (S.D.N.Y. 2012)). It states that the most important claims in this case are the claims against it for discriminatory and retaliatory discharge given the damages that are available for such claims (including backpay and front pay). (*Id.* at 14). SEPTA asserts that, because it is undisputed that DellaVecchia was forced to resign in late January 2019, DellaVecchia could not have possibly had any role in Plaintiff's subsequent discharge approximately one year later. (*Id.*). It observes that, if DellaVecchia had counsel and participated in this litigation, he likely would prevail on summary judgment as to any claims against him for aiding and abetting SEPTA's decision to terminate Edmonds' employment. (*Id.*)

---

[3] SEPTA also questions whether the complaint asserts claims against DellaVecchia and contends that any attempt to amend the complaint would be untimely and prejudicial. (Mem. of Law in Supp. of Mot. to Sever, ECF No. 19-1, at 12-13). At the time SEPTA filed its motion to sever, Edmonds had not yet moved for leave to file an amended complaint. Because the Court grants his motion for leave to amend, SEPTA's assertions that Edmonds did not, and could not, bring any claims against DellaVecchia are moot. (*See supra* § III.A.).

(citing *Hewitt v. BS Transp. of Ill., LLC*, 355 F. Supp. 3d 236, 238 (E.D. Pa. 2019); *Brzozowki v. Pa. Tpk. Comm'n*, 165 F. Supp. 3d 251, 262-63 (E.D. Pa. 2016), *aff'd as modified by* 738 F. App'x 732 (3d Cir. 2018) (per curiam)). Concerning the hostile work environment claims, SEPTA contends that they are "substantially different from his claims for discriminatory or retaliatory discharge," involving different elements, a different time frame, and no apparent tangible adverse employment action. (*Id.* at 15).

Regarding the second *Shapiro* factor, the need for different evidence, SEPTA likewise argues that "separable issues require the testimony of different witnesses and different documentary proof." (*Id.* at 16). It asserts that DellaVecchia was not a witness to the events surrounding Edmonds's termination because he had been forced to retire months earlier and that the unlawful termination claims may implicate post-discharge economic damages and mitigation efforts. (*Id.*). On the other hand, the "placeholder" claims against DellaVecchia "largely center around whether Mr. DellaVecchia sexually harassed Plaintiff in 2018; and, if so, is SEPTA liable." (*Id*). SEPTA further argues that the alleged discharge and harassment implicate different damage calculations due to the absence of any tangible adverse employment action in connection with the alleged harassment (which means that backpay and front pay will not be at issue). (*Id.* at 16-17).

As to the final two factors, regarding prejudice to each side, SEPTA argues that there is no evidence that severance will prejudice Edmonds but that the evidence does establish that it would continue to suffer prejudice if severance were denied. (*Id.* at 17-19). It asserts that any argument that there could be two separate trials "would be absurd" because the claims against DellaVecchia are only going forward due to Edmonds's failure to move for default judgment and there is no reason that the claims against him should ever go to trial. (*Id.* at 17). In contrast,

"Mr. DellaVecchia's unresolved procedural limbo generates considerable uncertainty that prejudices SEPTA." (*Id.* at 18). SEPTA notes that it had to expend valuable resources to have the improper requests for admissions withdrawn. (*Id.*) According to SEPTA, if Plaintiff had not withdrawn the requests for admissions after it had objected and if DellaVecchia had not answered them, the requests would have resulted in "damning admissions" that could have affected SEPTA's defenses. (*Id.*) SEPTA also contends that Edmonds is likely to present evidence that DellaVecchia sexually harassed him over the course of several months, which could shock and upset the jury. (*Id.*) It questions the seating arrangements at trial, observing that, if DellaVecchia is seated with its representatives, the jury may be misled about their continuing relationship, requiring SEPTA to devote time and energy to dispelling false assumption that it would cover any judgment against DellaVecchia individually. (*Id.*). Finally, SEPTA asserts that the continued failure to move for default judgment creates "prejudicial uncertainty" for the parties and the Court. (*Id.* at 18-19) (citing *Gonzalez v. Spunk Indus., Inc.*, No. ELH-18-2935, 2019 WL 4392951, at *6 (D. Md. Sept. 13, 2019); *Acosta v. TLC Residential, Inc.*, No. 15-2776, 2018 WL 1000347, at *2 (N.D. Cal. Feb. 20, 2018); *Hartford Ins. Co. v. Malaros*, No. 1:04-CV-6016, 2005 WL 173916, at *7 (E.D. Cal. Aug. 3, 2005); *Trophy Ridge, LLC v. Vital Bow Gear, Inc.*, Civ. A No. 03-10, 2006 WL 843587, at *5 (D. Mont. June 28, 2006)).

In his response to the motion to sever, Edmonds states that he would "file a Motion for Default Judgment against DellaVecchia by Monday, March 27, 2022." (Resp. to Mot. to Sever, ECF No. 26, at 2 n.1). According to him, if default judgment is granted, the only issues to be decided will be whether SEPTA is liable on Plaintiff's claims and for DellaVecchia's conduct. (*Id.*) Edmonds opposes the motion to sever on the grounds that the claims against the two parties

14

are similar and arise out of a common nexus of facts and that discovery was not yet completed as to potential liability for DellaVecchia's conduct. (*Id.* at 4). As of the date that his response was filed (March 25, 2022), Edmonds himself had not yet been deposed. (*Id.* at 5). According to him, "[t]he critical issue in this case, which Defendants completely ignore is whether or not SEPTA is liable [for DellaVecchia's conduct] under Respondeat Superior Liability," and, even if it were not liable under this theory, it can be held liable for its former employee's conduct under a negligence theory of liability. (*Id.* at 3). As to the PHRA "aiding and abetting" claim, Edmonds contends that SEPTA can be held liable for DellaVecchia aiding and abetting his own conduct and that, in any event, it can be held liable on the basis that Edmonds reported the harassment and SEPTA did nothing to stop it. (*Id.* at 6-8). Edmonds asserts that a severance would waste judicial time and resources because the same individuals, including DellaVecchia, would have to testify at two nearly identical trials. (*Id.* at 4-5). Furthermore, "the procedural nightmare is [purportedly] an animal of [SEPTA's] own creation" because "Defense Counsel refused to represent Defendant DellaVecchia based on a conflict, although no conflict was ever communicated." (*Id.* at 4). In addition to noting that it could have filed a cross-claim for damages against DellaVecchia, Edmonds takes issue with SEPTA's "smoke and mirrors attempt" to "distance themselves from Defendant [DellaVecchia] and evade liability for his conduct." (*Id.* at 4). He also contends that it is premature to rule on severance before fact discovery is completed and any summary judgment motions are decided and that all of the claims in this case are related and should be tried together. (*Id.* at 9).

      **2.**    **Discussion**

Before applying the severance factors, it is necessary to clarify where this case now stands. Initially, Edmonds did move for leave to file a first amended complaint after the motion

to sever was filed, and this Court is granting his motion. (*See supra* § III.A.). Both SEPTA and DellaVecchia are named as Defendants in two of the three PHRA claims (the fourth and fifth causes of action). (Mot. for Leave, ECF No. 25-3, at ¶¶ 120-26). Accordingly, even though the Court grants the motion to sever the PHRA claims against DellaVecchia, the two state law claims against SEPTA will remain. For his part, Edmonds has not filed a motion for default judgment, notwithstanding his prior representation that he would do so (*see* Resp. to Mot. to Sever, ECF No. 26, at 2 n.1). The docket also reveals that, with the exception of a doctor's deposition, discovery in this matter is closed (*see* Stipulation & Order, ECF No. 32, at 1).

The Court finds that the "the issues sought to be tried separately are significantly different from one another." *Shapiro*, 190 F.R.D. at 355 (citation omitted). The claims against SEPTA for discriminatory and retaliatory discharge do not involve DellaVecchia, who was forced to resign months before Edmonds's discharge. Although whether DellaVecchia harassed Edmonds may remain at issue in the SEPTA hostile work environment claims,[4] no such issues remain as to the claims against DellaVecchia himself given the anticipated entry of default judgment against him. In fact, Edmonds acknowledges that, "if the Court grants default judgment then the *only* issues to resolve at trial are whether SEPTA is liable for [Plaintiff's claims of discriminatory and retaliatory discharge and] for Defendant DellaVecchia's conduct [creating a hostile work environment]." (Resp. to Mot. to Sever, ECF No. 26, at 2 n.1)

---

[4] With respect to the state and federal hostile work environment claims against it, SEPTA admits that these claims "did involve DellaVecchia" and that Edmonds must establish "the existence of *respondeat superior* liability." (Mem. of Law in Supp. of Mot. to Sever, ECF No. 19-1, at 15) (quoting *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013)). In short, SEPTA cannot be held liable on the hostile work environment claims unless Edmonds's own allegedly discriminatory actions rose to the level of actionable harassment. *See, e.g.*, *Mandel*, 706 F.3d at 167. In turn, a supervisor can be held liable under the PHRA for aiding and abetting his or her own discriminatory conduct. *See, e.g.*, *West v. Dan Lepore & Sons Co.*, C.A. No. 17-1592, 2019 WL 1227716, at *10 (E.D. Pa. Mar. 14, 2019).

(emphasis added).  In addition, the process of obtaining a default judgment could implicate issues that are not applicable to SEPTA, which is defending itself in the litigation.

Turning to the second factor, the claims against SEPTA and DellaVecchia also do not involve overlapping witness testimony or documentary proof, *see, e.g.*, *Shapiro*, 190 F.R.D. at 355.  Because of the anticipated default judgment, there is no need to present any evidence to establish DellaVecchia's liability for aiding and abetting his own acts of harassment.  Furthermore, the termination claims against SEPTA do not involve the former supervisor.

As to prejudice, *see id.*, it appears that a trial on the claims against DellaVecchia should be unnecessary given the expected default judgment.  In fact, Edmonds indicated that he would file a motion for default judgment disposing of the DellaVecchia claims by March 27, 2022—but he has yet to do so.  (*Id.* at 3 n.2).  Edmonds has not even provided this Court with any explanation for why he has failed to move for default judgment.  Thus, the Court agrees with SEPTA that the "unresolved procedural limbo" created by Edmonds has caused considerable uncertainty prejudicing SEPTA. (Mem. of Law in Supp. of Mot. to Sever, ECF No. 19-1, at 18).  *Cf.*, *e.g.*, *Gonzalez*, 2019 WL 4392951, at *6 ("If the default entered by the Clerk were to remain in place, the case would exist in a permanent procedural limbo, but Plaintiff is unable to obtain substantive relief in the form of a judgment."); *Mercedes-Benz Fin. Servs. USA LLC v. Synergistiks, Inc.* No. 3:18-cv-184, 2019 WL 481753, at *2 (W.D. Pa. Feb. 7, 2019) (granting plaintiff's motion for default judgment because "Plaintiff's claims and potential for recovery will remain indefinitely suspended in legal limbo unless default judgment is entered").  This procedural uncertainty has already resulted in counsel for Edmonds sending DellaVecchia requests for admissions, which he acknowledges was a mistake on his part and were withdrawn.  (Resp. to Mot. to Sever, ECF No. 26, at 3 n.2).  But SEPTA still had to object to the improper

requests for admissions.  (Mot. to Sever, ECF No. 19-3, Ex. B at ¶ 19).  Furthermore, it is likely that SEPTA would have to expend additional resources in order to address similar complications in the future arising out of the procedural confusion created by Edmonds's failure to move for default judgment, especially if this case goes to trial.  Under the circumstances, severance of the claims against the DellaVecchia should prevent any additional and unnecessary prejudice to SEPTA.

Accordingly, because the *Shapiro* factors weigh in favor of severance, the Court grants SEPTA's motion to sever.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Edmonds's Motion for Leave of Court to File First Amended Complaint and SEPTA's Motion to Sever Plaintiff's Claims Against Separate Defendants.  An appropriate Order follows.

BY THE COURT:

  /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge